OPINION. BlacK, Judge: Respondent determined and here contends that the admitted gain of $7,301.81 realized by the petitioner and her husband, Cly C. Newton, upon the sale of their business known as the Puget Sound Novelty Co. constituted 95.51224 per cent ordinary gain and 4.48776 per cent capital gain. The petitioner contends that the gain realized upon the sale of the business was a capital gain and therefore taxable at the capital gain rates under section 117 of the Internal Revenue Code. The position of the petitioner is that the entire gain on the transaction resulted from the sale of intangibles such as good will, the right to do business under the name “Puget Sound Novelty Company,” the location value of the premises on “pinball row” or “coin machine row,” and the “franchise” or right to represent various manufacturers in the distribution of their products. Intangibles such as these are capital assets under section 117 of the Internal Revenue Code, since they were not stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of their trade or business, or property used in their trade or business of a character which would be subject to any allowance for depreciation. See Aaron Michaels, 12 T. C. 17; Rainier Brewing Co., 7 T. C. 162; affd., 165 Fed. (2d) 217; rehearing denied (C. C. A., 9th Cir.), 166 Fed. (2d) 324; Ensley Bank & Trust Co. v. United States, 61 Fed. Supp. 317; affd., 154 Fed. (2d) 968; certiorari denied, 329 U. S. 732. The respondent’s determination herein is presumed to be correct and the burden is upon the petitioner to prove that it is wrong. Welch v. Helvering, 290 U. S. 111. Has the petitioner herein overcome the presumption of correctness which adheres to the respondent’s determination ? The facts show that the assets for which the unit consideration was paid included the furniture, the fixtures and. equipment, the stock of merchandise on hand, the deposit on equipment ordered but not yet delivered in the amount of $2,950, the reserve with the American Discount Co. in the sum of approximately $2,670, accounts receivable, good will, and the right to use the name “Puget Sound Novelty Company.” There was some evidence that the location on Elliott Avenue West, which was known as “pinball row” or “coin machine row,” had some value. The principal operators or dealers of pinball machines were located in that area. However, the facts show that petitioner and her husband did not own or control the location or have any valuable claim thereto which could be transferred to the purchasers. At the time of the sale the premises were leased under a year to year lease with the owner, with no option of renewal. Moreover, the sale took place on December 24, 1943, and the lease expired on December 31, 1943, and it was necessary for the prospective purchasers to open negotiations with the building owner for the renewal of the lease. As far as the “franchise” or the right to represent various manufacturers in the distribution of their products had value, no such franchise was proved. There was some evidence of oral arrangements with various manufacturers for the distribution of their machines and equipment, and thus whatever relationship the Puget Sound Novelty Co. had with such manufacturers was permissive and terminable at will by the manufacturer. No proof was offered that the name “Puget Sound Novelty Company” had a value and no item of good will was ever set up on the books of account of the Puget Sound Novelty Co. or its predecessor, the Evergreen Novelty Corporation. Moreover, the evidence convinces us that the assets which are clearly identifiable and of the most value were the tangible assets, particularly the inventory of merchandise, which was valued at $14,033.05. In addition there was included in the sale price of the business the cash deposit on equipment ordered but not yet delivered in the amount of $2,950, a reserve with the American Discount Co. in the sum of approximately $2,670, and an undepreciated value of fixed assets in the amount of $659.36, aggregating the amount of $20,312.14, which is very near the total selling price of $22,150 for the business. The evidence also indicates that the price of the various machines listed in the inventory represented the cost of the machines to the firm. The evidence also establishes that no such amusement machines were being manufactured in 1943, due to the war, and the scarcity of such equipment had caused prices to increase, and that at least some of the machines listed in the inventory were actually worth more than the amounts at which they were listed therein. The evidence thus supports respondent’s contention that the tangibles included in the inventory were the things of real value which were sold at a profit, rather than good will and other intangibles. We conclude, therefore, that insufficient evidence has been introduced to establish that any definite part of the gain resulted from the sale of good will and other intangibles, and the respondent’s determination is sustained. Cf. Green v. Allen, 67 Fed. Supp. 1004; Williams v. McGowan, 152 Fed. (2d) 570. Decision will lie entered for the respondent.